IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SORRELL HOLDINGS, LLC                                                    PLAINTIFF

vs.                               Case No. 4:16-cv-04019

INFINITY HEADWEAR & APPAREL, LLC                         DEFENDANT

## CLAIM CONSTRUCTION
## MEMORANDUM AND ORDER

Before the Court is Plaintiff Sorrell Holdings, LLC ("Sorrell") Opening Claim Construction Brief (ECF No. 50),[1] Defendant, Infinity Headwear & Apparel, LLC ("Infinity") Response Brief (ECF No. 51), Sorrell's Reply Brief (ECF No. 53), and Infinity's Sur-Reply Brief (ECF No. 54).

The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 33. The Court, having reviewed the pleadings, presentation materials, other papers, and case law, finds no hearing necessary and finds the disputed terms of the patents-in-suit should be construed as set forth herein.

**I. Background**:

Plaintiff Sorrell alleges Infinity's product line, the MascotWear Mascot Bath Loofahs ("Product"), infringes on United States Patent No. 6,887,007 ("007 Patent"). Specifically, Sorrell alleges the Product infringed on the 007 Patent's eleventh claim ("Claim 11"). Claim 11 covers a washing device comprising:

---

[1] The docket numbers for this case are referenced by the designation "ECF No."

a scrubber made of a foraminous material and gathered to form a pleated ball; a figurative handle coupled to the scrubber; and a cinch for binding the foraminous material into the pleated ball and forming a loop extending around at least a portion of said handle to secure the handle to the scrubber.

ECF No. 50-2, Pg. 15, col.6, ll. 27-35.

## II. **Applicable Law:**

The claims of a patent define the invention to which the patentee is entitled the right to exclude. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*). Claim terms are given their ordinary and customary meaning to one of ordinary skill in the art at the time of the invention, unless there is clear evidence in the patent's specification or prosecution history that the patentee intended a different meaning. *Id*. at 1312-1313. Claim construction is informed by the intrinsic evidence: the patents' specifications and file histories. *Id.* at 1315-1317. Courts may also consider evidence such as dictionary definitions and treatises to aid in determining the ordinary and customary meaning of claim terms. *Id*. at 1322.

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent*. Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds

a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–1315.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp*., 299 F.3d 1313, 1325 (Fed. Cir. 2002). However, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp*., 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323.

A court should "avoid the danger of reading limitations from the specification into the claim[s]." *Phillips,* 415 F.3d at 1323. For example, "although the specification often describes very specific embodiments of the invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments." *Id.* The Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Id.* This is not only because of the requirements of § 112 of the Patent Act, but also because "persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments." *Id.* Limitations from the specification should only be read into the claims if the patentee "acted as his own lexicographer and imbued the claim terms with a particular meaning or disavowed or disclaimed scope of coverage,

by using words or expressions of manifest exclusion or restriction." *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1369 (Fed. Cir. 2003) (citations omitted); *Thorner v. Sony Computer Entm't Am. LLC,* 669 F.3d 1362, 1367 (Fed. Cir. 2012).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id*. at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg*., 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips,* 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp*., 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not helpful to a court. *Id.* Extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

Many other principles of claim construction, though not addressed in *Phillips*, remain significant in guiding this Court's charge in claim construction. The Court is mindful that there is a "heavy presumption" in favor of construing claim language as it would be plainly understood by one of ordinary skill in the art. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999); *cf. Altiris, Inc., v. Symantec Corp.*, 318 F.3d 1364, 1372 (Fed. Cir. 2003) ("[S]imply because a phrase as a whole lacks a common meaning does not compel a court to abandon its quest for a common meaning and disregard the established meaning of the individual words."). The same terms in related patents are presumed to carry the same meaning. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("We presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning.") "Consistent use" of a claim term throughout the specification and prosecution history provides "context" that may be highly probative of meaning and may counsel against "[b]roadening of the ordinary meaning of a term in the absence of support in the intrinsic record indicating that such a broad meaning was intended . . . ." *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143-1146 (Fed. Cir. 2005).

Claim construction is not meant to change the scope of the claims but only to clarify their meaning. *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) ("In claim construction the words of the claims are construed independent of the accused product, in light of the specification, the prosecution history, and the prior art. . . . The construction of claims is simply a way of elaborating the normally terse claim language[] in order to understand and explain, but not to change, the scope of the claims.") (citations and internal quotations omitted). Regarding claim scope, the transitional term "comprising," when used in claims, is inclusive or open-ended and "does

not exclude additional, unrecited elements or method steps." *CollegeNet, Inc. v. ApplyYourself, Inc.,* 418 F.3d 1225, 1235 (Fed. Cir. 2005) (citations omitted). Finally, claim constructions that read out a preferred embodiment are rarely, if ever, correct. *Vitronics*, 90 F.3d at 1583-84.

### III. Agreed Terms:

In their June 1, 2018 Joint Construction and Prehearing Statement (ECF No. 49), their briefing, and their August 15, 2018 Joint Claim Construction Chart (ECF No. 55), the parties have set forth agreements as to the following terms:

| Term | Claim | Agreed Construction |
|---|---|---|
| foraminous material | 11 | material covered with holes, including but not limited to a mesh material |
| pleated ball | 11 | a gathering of pleated foraminous material that generally forms a roundish shape |
| coupled | 11 | attached together |
| to secure | 11 | to fasten |
| loop | 11 | a line having a closed generally curved shape |

### IV. Disputed Terms:

There are two disputed terms for the Court to construe.

### A. "figurative handle"[2]

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| a handle that represents a figure, resemblance, or likeness | a figure, resemblance, or likeness which is able to be grasped by the hand and which enables the user to access parts of the body that may not be reached by hand |

---

[2]Based on the parties proposals there is no fundamental dispute that "figurative," means "a figure, resemblance, or likeness." ECF No. 50, Pg. 10 and ECF No. 51, Pg. 8.

**(1) The Parties' Positions**

The parties agree the dispute over this portion of the claim is only with the term "handle." Sorrell argues Infinity's proposed construction will not help the jury and is improper. ECF No. 50, Pg. 10-13. According to Sorrell, "handle" has plain and ordinary meaning. *Id.* Sorrell proposes to construe "figurative handle" as "a handle that represents a figure, resemblance, or likeness," or, if the Court chooses to construe the "handle" term, then "a figure, resemblance, or likeness which is able to be grasped by the hand." ECF No. 50, Pg. 12.

Infinity alleges there is more than one ordinary meaning of "handle," and as a result, the Court should construe "handle" rather than using the word in the construction of "figurative handle." Additionally, because the parties dispute the construction of "handle," the Court should construe "handle" as a part of its claim construction process rather than leaving it undefined. ECF No. 51, Pg. 8-12.

**(2) Analysis**

The differences between parties proposed constructions indicate uncertainty as to the claim term's scope, which is properly resolved through claim construction. "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). If the parties dispute the scope of a certain claim term, it is the court's duty to resolve the dispute. *Id.* at 1362.

The 007 Patent seems to recognize two different "handles." The first one is identified by reference number 32 (ECF No. 50-2, Pg. 14, col. 3, ll. 1-5) (the "32 handle"). The other is identified

by reference number 70 (ECF No. 50-2, Pg. 14, col. 5, ll. 4-16) (the "70 handle"). Infinity argues the specification for the "32 handle" indicates it "may be an extension of the drawstring, an extension of the cinch, or may be a separate piece," but a drawstring could not be "a figure, resemblance, or likeness." ECF No. 51, Pg. 11. Therefore, Infinity states the handle referenced using the term "figurative handle" must be the "70 handle." *Id.* As such, Infinity's proposed construction is derived specifically from the "70 handle" and its corresponding description in the specification of "which is able to be grasped by the hand and which enables the user to access parts of the body that may not be reached by hand."

However, Infinity's position is flawed based on a review of Fig. 9 which sets forth a depiction of the "70 handle." ECF No. 50-2, Pg. 11. A review of Fig. 9 shows there is nothing "figurative" about the "70 handle." *Id.*



FIG. 9

Therefore, Infinity's reliance the "70 handle" for support of their construction is misplaced. It cannot be said the patentee meant to limit the meaning of "handle" to what is described in the embodiment of Fig. 9.

The Court agrees with Sorrell that the term "handle" should not be limited in scope to single embodiment. As such, the Court rejects Infinity's proposed construction. However, the Court also finds the term "handle" requires construction and accordingly rejects Sorrell's proffered construction as well.

It is clear to the Court the 007 Patent intended the term "handle" to have its ordinary and common meaning. "Handle" means "a part that is designed especially to be grasped by the hand." "*Handle*" Merriam-Webster.com,https://www.merriam-webster.com/dictionary/handle (6 September 2018). The Court therefore, construes **"figurative handle"** to mean **"a figure, resemblance, or likeness which is designed especially to be grasped by the hand."**

B. "cinch"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| a fastening device used to secure the pleats, including but not limited to a string or band that is tied to contain the pleats | string, elastic band, or metal band which does not directly contact the user when bathing |

**(1) The Parties' Positions**

Sorrell proposes the Court construe "cinch" as "a fastening device used to secure the pleats, including but not limited to a string or band that is tied to contain the pleats." ECF No. 50, Pg. 9. In support, Sorrell argues the ordinary meaning of "cinch" should apply, relying in part on the dictionary definition. *Id.* at 6. Sorrell, in response to Infinity, also argues a "cinch" is not limited to a specific material and is not precluded from coming into contact with a user while bathing. *Id.*

In response, Infinity argues Sorrell's proposed construction would not give meaning to all of Claim 11's terms and their construction of "cinch" would render it superfluous in light of the rest

of Claim 11. ECF No. 51. Infinity also argues their proposed constructions rely on specific provisions from the 007 Patent's specification and the figures contained therein. *Id.*

**(2) Analysis**

The Court agrees with Infinity that Sorrell's proposed construction of "cinch" would render it superfluous in light of the rest of Claim 11. If Sorrell's proposed construction of "cinch" was adopted, Claim 11's third component would read as follows:

> a [fastening device used to secure the pleats, including but not limited to a string or band that is tied to contain the pleats] for binding the foraminous material into the pleated ball and forming a loop extending around at least a portion of said handle to secure the handle to the scrubber.

Sorrell's proposed definition for "cinch" states the cinch is "used to secure the pleats" and "tied to contain the pleats." Claim 11 provides that a "cinch" is used "for binding the foraminous material into the pleated ball." There is no need for the construction of "cinch" to include language like "fastening device" because it is cumulative to the language describing the function of the "cinch" which already exists in the Claim.

The intrinsic record, which includes the patent specification, is the single best guide to the meaning of a disputed term. *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1380 (Fed. Cir. 2016). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1380-1381 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

Infinity's argues their proposed construction of "cinch" relies on specific provisions from the 007 Patent's specification and some of the figures contained therein. In support, they point out

the specification mentions "cinch," identified by reference number 30, or "cinches" approximately 18 times. The 007 Patent's most detailed discussion of "cinch" reads as follows:

> A cinch extends around and holds together the pleats and nozzle. Cinch may have a variety of lengths depending upon the size of the pleats and nozzle. In one embodiment, cinch comprises a string that extends around and is tied to contain the please and nozzle. In another embodiment, cinch is an elastic band that is stretched to extend around the pleats and nozzle and then released to contain the pleats. The cinch may also comprise a metal band. The pleats conceal the cinch and nozzle such that it is not visible to a user as illustrated in FIG. 1. Additionally, cinch and nozzle do not directly contact the user when bathing with the device as it may be abrasive or otherwise uncomfortable to the user.

ECF No. 50-2, Pg. 14, col. 3, ll. 40-55 (reference numbers removed). This paragraph is additional support for Infinity's proposed construction that "cinch" should be construed as a "string, elastic band, or metal band which does not directly contact the user when bathing." *Id*. Although the specification states the "cinch" might have a variety of lengths, it does not indicate it could be of a variety of material by stating a "cinch" is a string, elastic band or metal band. *Id.* The specification also contemplates the "cinch" is covered by the pleated ball such that it does not directly contact the user when bathing. *Id.*

Further, the quoted paragraph expressly indicates it applies to multiple embodiments wherein it states a "cinch" comprises a string in one embodiment and an elastic band in another. Additionally, it says the "cinch" does not directly contact the user "when bathing with the device 10," using the reference number for the device, and not limited to particular embodiment.

The Court therefore adopts Infinity's proffered definition and construes **"cinch"** to mean **"string, elastic band, or metal band which does not directly contact the user when bathing."**

## V. Conclusion:

The Court hereby orders the claim terms addressed herein construed as indicated. Summary charts are attached below as Exhibit A (agreed terms) and Exhibit B (disputed terms).

The parties are further ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual constructions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the constructions adopted by the Court.

**DATED this 12th day of September 2018.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE

**EXHIBIT A**

| Term | Claim | Court's Construction |
|---|---|---|
| foraminous material | 11 | material covered with holes, including but not limited to a mesh material |
| pleated ball | 11 | a gathering of pleated foraminous material that generally forms a roundish shape |
| coupled | 11 | attached together |
| to secure | 11 | to fasten |
| loop | 11 | a line having a closed generally curved shape |

**EXHIBIT B**

| Disputed Claim Term | Claim | Court's Construction |
|---|---|---|
| figurative handle | 11 | a figure, resemblance, or likeness which is meant to be grasped by the hand |
| cinch | 11 | string, elastic band, or metal band which does not directly contact the user when bathing |